# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| EHAB SALEM, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 16-cv-3927 |
| LEGAL LIAISON SERVICE and EQUIFAX INFORMATION SERVICES, LLC, | ) Judge John J. Tharp, Jr. ) ) ) |
| Defendants. | ) |

## **MEMORANDUM OPINION AND ORDER**

What do you do when a credit reporting agency continues to report that you owe a debt, despite your repeated protestations that you never incurred any such debt? That is the situation that confronted Ehab Salem, the plaintiff in this case. A debt collection company named Legal Liaison Services ("LLS") reported that Salem owed a debt of $540, and that account began to be listed in Salem's credit file with Equifax Information Services, LLC. Salem submitted eight disputes to Equifax, contending each time that he was not liable for the debt. Each time, however, after asking LLS to investigate the dispute, Equifax reported back to Salem that he was liable for the debt, and the account remained in his credit file.

After all of these failed attempts to get the debt removed from his file, Salem filed this lawsuit against both LLS and Equifax. He sued Equifax under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, and LLS under the FCRA, the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, and Illinois state law. LLS has not appeared to defend this suit, while Equifax has filed a motion for summary judgment. For the reasons that follow, Equifax's motion for summary judgment is granted in part and denied in part.

## BACKGROUND

Equifax is a consumer reporting agency that maintains credit files for millions of consumers, including Salem. At some point in time, LLS, acting as a debt collector for Alarm Monitoring, Inc. ("AMI"), reported that Salem owed a debt to AMI, and the account began to be listed in Salem's credit file. Salem, however, has consistently asserted that he never had any relationship with AMI and that he is not responsible for this debt.

This lawsuit stems from Salem's repeated efforts to get Equifax to remove the account at issue from his credit file. The debt was initially listed as having a value of $540. Over the course of the year 2015, Salem submitted eight disputes to Equifax regarding the account. *See* Def. Equifax Information Services LLC's Statement of Material Facts in Supp. of Its Mot. for Summ. J. ¶¶ 23, 25, ECF No. 54. On some of those occasions, Salem provided supporting documents along with his dispute. *Id.* ¶ 26.

Equifax's process for investigating such claims involves what is known as Automatic Consumer Dispute Verification ("ACDV"). Equifax collects credit information from sources called "data furnishers"; LLS is one such furnisher. When consumers make complaints with Equifax to dispute the accuracy of information in their credit files, Equifax usually responds by contacting the furnisher of that information. Equifax transmits an ACDV form to the data furnisher. The ACDV form uses a set of defined codes to describe the dispute, which may be supplemented by a narrative description. *See id.* ¶¶ 15-17. When a furnisher receives an ACDV from Equifax, it is obligated to conduct its own investigation into the dispute and report the results back to Equifax. Equifax will then typically take the action recommended by the data furnisher (either to update the account or make no changes), though it may sometimes make changes not recommended by the furnisher. Once Equifax's investigation is complete, it will send the consumer a letter or e-mail containing the results of the investigation.

On each of the eight occasions that Salem submitted a dispute to Equifax, the company responded by sending an ACDV form to LLS. Each time, Equifax described the dispute and included any documents it received from Salem along with the dispute. On all of those occasions, LLS responded to the ACDVs by stating that it was confirming that the account belonged to Salem and that the date of first delinquency was November 2011. *See id.* ¶¶ 29-31. Equifax then provided the results of its investigation to Salem for each of the eight disputes, and the account continued to be listed in Salem's credit file. On the last of these occasions, however, in confirming that Salem was responsible for the account, Equifax stated that the debt was only $420 instead of $540, as it had previously reported. This reduction is unexplained, and Salem asserts that he did not make or authorize any payment on the account. Compl. ¶ 26, ECF No. 1.

Salem filed this lawsuit in March 2016. It appears that the account was deleted at some point after the filing of the complaint, though the exact details of this removal are unclear.[1] LLS has not appeared to defend this lawsuit. Equifax has filed a motion for summary judgment, which is now before this Court.

## DISCUSSION

A court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine if "the evidence is such that a reasonable jury could

---

[1] Salem asserts that "Equifax did not remove the LLS account from Plaintiff's credit file until after Plaintiff filed the instant lawsuit." Local Rule 56.1(b)(3) Statement of Additional Facts ¶ 11, ECF No. 58. Equifax disputes this claim, but for reasons that are unclear. It states that "Equifax received an AUD from LLS requesting deletion of the LLS account, and Equifax deleted the LLS account at this request." Def. Equifax Information Services, LLC's Resp. to Pl.'s Statement of Additional Facts ¶ 11, ECF No. 61. But Equifax has failed to state with any specificity **when** it alleges that the deletion took place. (Nor has it explained why LLS supposedly requested the deletion, or what an AUD is.)

return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In reviewing a motion for summary judgment, the Court "construe[s] all facts and inferences in favor of the nonmoving party." *Love v. JP Cullen & Sons, Inc.*, 779 F.3d 697, 701 (7th Cir. 2015).

In his response in opposition to summary judgment, Salem has abandoned some of the theories of recovery against Equifax that he initially put forward in his complaint. Salem continues to advance two arguments as to why he is entitled to relief. In particular, Salem asserts that Equifax's conduct violated two separate provisions of the FCRA. The first is 15 U.S.C. § 1681e(b), which requires that whenever "a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." The second provision, 15 U.S.C. § 1681i, establishes a procedure that must be followed when consumers notify a consumer reporting agency that they are disputing the accuracy of information contained in their credit files. Under such circumstances, the agency is required to "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate." 15 U.S.C. § 1681i(a)(1)(A).

The FCRA also provides for varying types of damages depending on whether the violation of the statute is negligent or willful. If the violation is negligent, the plaintiff may recover "any actual damages sustained by the consumer as a result of the failure," along with the costs of the action and reasonable attorney's fees. 15 U.S.C. § 1681o. In the event of willful noncompliance, the plaintiff may also be able to recover statutory damages and punitive damages. *See* 15 U.S.C. § 1681n. Salem contends that Equifax's conduct was willful, rendering it potentially liable for punitive damages under § 1681n, or, in the alternative, that it was negligent, allowing for a recovery under § 1681o. Compl. ¶¶ 41-42.

I.      **The Collateral Attack Issue**

Before addressing the elements of a claim under either § 1681e(b) or § 1681i, Equifax's first argument in favor of summary judgment is that Salem's lawsuit is an impermissible collateral attack on the validity of his debt. Equifax cites various cases, primarily from out of this circuit, for the proposition that the FCRA does not require consumer reporting agencies to resolve legal disputes between consumers and creditors. *See* Mem. in Supp. of Def. Equifax Information Services LLC's Mot. for Summ. J. ("MSJ") 6-7, ECF No. 53. As the Ninth Circuit has put it, because consumer reporting agencies "are ill equipped to adjudicate contract disputes, courts have been loath to allow consumers to mount collateral attacks on the legal validity of their debts in the guise of FCRA reinvestigation claims." *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 891 (9th Cir. 2010). In Equifax's telling, the company is simply stuck in the middle of a disagreement between Salem and LLS, and the FCRA does not require it to arbitrate this dispute.

The disagreement between Salem and LLS, however, is not the type of legal dispute that the courts that have expressed concern about "collateral attacks" have had in mind. For example, in *Carvalho*, the dispute concerned whether, even if the credit report at issue were accurate, the plaintiff was legally obligated to pay the bill. *See id.* In contrast, the court noted, the plaintiff did not contend that the "collection account ***does not pertain to her***, that the amount past due is too high or low, or that any of the listed dates are wrong." *Id.* (emphasis added). Here, that is exactly what Salem is challenging; he is asserting that the contested account does not pertain to him. Similarly, in *DeAndrade v. Trans Union LLC*, 523 F.3d 61 (1st Cir. 2008), the First Circuit distinguished between "a factual inaccuracy that could have been uncovered by a reasonable reinvestigation" and "a legal issue that a credit agency such as Trans Union is neither qualified nor obligated to resolve under the FCRA," with the latter representing an impermissible collateral attack. *Id.* at 68-69. The dispute in the present case is fundamentally a factual one: it is about who

5

is the person or entity that incurred the debt to AMI and is consequently responsible for it. It does not present any complicated issue of legal interpretation that Equifax would not have been qualified to address. Accordingly, Salem's suit is not the kind of collateral attack that serves as an obstacle to an FCRA claim.

## II. The Accuracy of the Reported Information

Equifax's next argument in favor of summary judgment is that the information it reported was accurate, and so Salem has not created a genuine issue of material fact as to whether his credit report contained inaccurate information. *See* MSJ 4-6. Demonstrating that a credit report contained inaccurate information is a required element of a claim under both § 1681e(b) and § 1681i. *See Handrock v. Ocwen Loan Servicing, LLC*, 216 F. Supp. 3d 869, 873 (N.D. Ill. 2016) ("To state a claim under either § 1681e(b) or § 1681i, Plaintiffs must allege that their credit reports contained inaccurate information."). "Typically, the accuracy defense is an issue of fact." *Price v. Trans Union, LLC*, 737 F. Supp. 2d 281, 285 (E.D. Pa. 2010).

Equifax's support for its position is its assertion that "LLS's records, which include information received from Alarm Monitoring Inc., publicly available sources and privately obtained proprietary information, show that the Account belonged to a business which was controlled and operated by Mr. Salem, at the time the debt was incurred." MSJ 5. In other words, the only piece of evidence that Equifax points to in order to support its claim that the report was accurate is the fact that LLS repeatedly stated that it was accurate.

Equifax "has a very myopic view of the record." *Hanson v. Experian Info. Sols., Inc.*, No. 10-cv-2022, 2012 WL 280706, at *3 (N.D. Ill. Jan. 27, 2012). The factual record in this case is muddled, and the evidence tying Salem to the disputed account is thin. There are a number of other facts that could lead a reasonable jury to conclude that the information was inaccurate. First, the basis of LLS's and Equifax's claims that Salem was liable for the debt is anything but clear. While

6

Equifax states that LLS's records showed that "the Account belonged to a business which was controlled and operated by Mr. Salem," MSJ 5, as far as the Court can determine, Equifax does not name this business anywhere in the record. Nor does it provide any other information about what this business was or what services it may have purchased from AMI that would have made it liable for the debt. Salem, of course, has repeatedly denied having any interactions with AMI that could have led him to be liable for the debt at issue. Against this thin record, a jury could fairly credit Salem's denial and conclude that Equifax's vague and ambiguous claim that Salem has some connection to this debt should be given little to no weight in its analysis.

In addition, there is the fact that at some point in time, Equifax did remove the disputed account from Salem's credit file. The specifics of how this happened are, again, unclear. Salem states that it happened after he filed the present lawsuit. Equifax denies this, but it does not specify when it alleges that the account was removed. Equifax states instead that LLS requested deletion of the account, and Equifax deleted it upon receiving this request. There is nothing in the record that indicates that Salem (or anyone else acting on his behalf) actually paid the debt. A reasonable jury could infer that LLS would have been unlikely to request that Equifax remove the account from Salem's file if Salem were in fact responsible for the debt and had not paid it. In short, taking the entire record into account, there is a genuine issue of material fact as to whether the information in Salem's credit file was inaccurate.

### III.     Section 1681e(b): Reasonable Procedures to Assure Accuracy

To avoid summary judgment on his claim under § 1681e(b), Salem must raise a genuine issue of material fact as to each of four elements. They are: (1) that there was inaccurate information in his credit file; (2) that the inaccuracy was due to Equifax's failure to follow reasonable procedures to ensure maximum possible accuracy; (3) that he suffered actual damages; and (4) that those damages were caused by the inclusion of the inaccurate information. *Benson v.*

*Trans Union, LLC*, 387 F. Supp. 2d 834, 840 (N.D. Ill. 2005). In its motion for summary judgment, Equifax does not appear to contest that Salem suffered actual damages or that those damages were caused by the allegedly inaccurate information in his credit file. As discussed above, this Court has already concluded that there is a genuine issue of material fact with respect to whether the information was accurate. To get to a jury, then, Salem must demonstrate that there is a genuine issue of material fact as to the second element; that is, whether Equifax failed to follow reasonable procedures to ensure accuracy.

Salem states that he "has no grievance with Equifax's initial reporting of the LLS account as belonging to him." Pl.'s Resp. to Equifax Information Services, LLC's Mot. for Summ. J. ("Resp.") 11, ECF No. 59. Rather, Salem asserts that Equifax violated the FCRA through its conduct after Salem filed his disputes challenging the debt, which should have put Equifax on notice that the information provided by LLS might be unreliable. *See id.* According to Salem, Equifax's failure to do any investigation other than to send ACDV forms to LLS in response to his disputes constituted a failure to follow reasonable procedures under § 1681e(b). *See id.* at 11-12.

Salem relies largely on the Seventh Circuit's decision in *Henson v. CSC Credit Servs.*, 29 F.3d 280 (7th Cir. 1994), to advance this argument. *See* Resp. 10. That case, however, does not support Salem on this point. In *Henson*, an Indiana state court erroneously noted in its Judgment Docket that a money judgment had been entered against one of the plaintiffs; two credit reporting agencies subsequently reported that the plaintiff owed that money judgment. *See Henson*, 29 F.3d at 282. The plaintiffs sued the credit reporting agencies under the FCRA. The district court granted the agencies' motions to dismiss. *Id.* at 283. The Seventh Circuit concluded that the Judgment Docket was a "presumptively reliable source" and held that "as a matter of law, a credit reporting agency is not liable under the FCRA for reporting inaccurate information obtained from a court's

Judgment Docket, absent prior notice from the consumer that the information may be inaccurate." *Id.* at 285. It stated, however, that under certain circumstances, such as when a consumer reports a possible error to the agency, the agency might be required to go beyond its initial source "to verify the accuracy of its initial source of information." *See id.* at 287. The Seventh Circuit affirmed the district court's dismissal with respect to § 1681e(b) but remanded the case with respect to § 1681i. *See id.* at 286-87.

In other words, the *Henson* court dismissed the § 1681e(b) claim notwithstanding that the plaintiffs may have reported the alleged error to the credit reporting agencies and that the defendants' reinvestigation may have been insufficient. The lesson of *Henson* is that, when a plaintiff's only objection to a consumer reporting agency's conduct is that the agency did not conduct an adequate investigation in response to the plaintiff's dispute, the plaintiff has not stated a claim under § 1681e(b), and the claim is properly evaluated under the heading of § 1681i. Other courts have likewise rejected the suggestion that "the reasonableness of [an agency's] reinvestigations" following a consumer's dispute "is material to the Section 1681e(b) inquiry." *Saenz v. Trans Union, LLC*, 621 F. Supp. 2d 1074, 1081 (D. Or. 2007); *see also Grigoryan v. Experian Info. Sols., Inc.*, 84 F. Supp. 3d 1044, 1071 (C.D. Cal. 2014) ("[E]vidence of inadequacies in defendants' reinvestigation procedures under § 1681i . . . is not probative of the fact that defendants have violated § 1681e(b).").

In the present case, as noted above, Salem admits that he "has no grievance with Equifax's initial reporting of the LLS account as belonging to him." Resp. 11. His entire case against Equifax is premised on its alleged shortcomings in reinvestigation ***after*** he filed his disputes with the company contesting that he owed the debt. Because any such shortcomings are insufficient to show

9

that Equifax has failed to follow reasonable procedures to ensure maximum possible accuracy under § 1681e(b), the Court grants summary judgment in favor of Equifax on this issue.

## IV.  Section 1681i: Reasonable Reinvestigation of Disputes

If a consumer disputes the accuracy of information contained in the consumer's file and notifies the agency of this dispute, § 1681i requires the agency to "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate." 15 U.S.C. § 1681i(a)(1)(A). As that statutory text indicates, "the standard is reasonableness—the agency must 'make reasonable efforts to investigate and correct inaccurate or incomplete information brought to its attention by the consumer.'" *Benson*, 387 F. Supp. 2d at 842 (quoting *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1160 (11th Cir. 1991)).

In this case, in response to each of Salem's eight disputes, Equifax's unvarying method of reinvestigation was to send an ACDV form to LLS. As a general matter, the "use of ACDVs has been accepted by courts as an adequate method for assuring accuracy." *Perry v. Experian Info. Sols., Inc.*, No. 05-cv-1578, 2005 WL 2861078, at *5 (N.D. Ill. Oct. 28, 2005); *see also Lee v. Experian Info Sols.*, No. 02-cv-8424, 2003 WL 22287351, at *6 (N.D. Ill. Oct. 2, 2003). As the *Henson* court wrote, however, under certain circumstances an agency may be obligated "to verify the accuracy of its initial source of information." *Henson*, 29 F.3d at 287. The Seventh Circuit highlighted two factors that explain when these circumstances exist:

> Whether the credit reporting agency has a duty to go beyond the original source will depend, in part, on whether the consumer has alerted the reporting agency to the possibility that the source may be unreliable or the reporting agency itself knows or should know that the source is unreliable. The credit reporting agency's duty will also depend on the cost of verifying the accuracy of the source versus the possible harm inaccurately reported information may cause the consumer.

*Id.*

Equifax's case regarding § 1681i is straightforward: the company argues that it fully complied with its obligations under the statute through its use of the ACDV process. Each time that Salem submitted a dispute, Equifax notified LLS by sending an ACDV form. Equifax would describe the nature of the dispute and pass along the documents, if any, that Salem had submitted. Upon receiving LLS's responses, Equifax reported the results of these investigations to Salem. Equifax's position is that these actions were sufficient to constitute a reasonable reinvestigation under § 1681i as a matter of law.

Salem's central argument in response is that, even if the ACDV process may sometimes suffice as a reasonable reinvestigation under § 1681i, it does not in this case. The primary reason for this, he says, is that in some of his complaints, he provided documentation to support his claim that the account did not belong to him. The main piece of documentation is the business license and registration application for a company called Wireless Connect, Inc. ("WCI"). In one letter to Salem, AMI, through its attorneys, attached an invoice containing the account history of the disputed account, which indicated that the name associated with the account was "Wireless Solutions." *See* Compl. ¶¶ 14-15; Ex. C, ECF No. 1-3. Salem has expressed his belief that Wireless Solutions and WCI are the same entity, suggesting that WCI is the official name and Wireless Solutions may be a name under which it does business. *See* Dep. of Ehab Salem 69:24–70:6, Ex. B, ECF No. 58-2. Salem obtained the business license and registration application for WCI from the town in which it is located, the Village of Maywood. That license appears to show that the person listed as the business owner for WCI was someone named "Belal Hadidi." *See* Ex. G, ECF No. 58-7. The import of the license, according to Salem, is that it demonstrates that he is not the person responsible for any debts that may have been incurred by WCI and/or Wireless Solutions.

In at least three of his complaints that he filed with Equifax, Salem submitted copies of this license along with his disputes. *See* Ex. D, Ex. F, Ex. H, ECF No. 54-1.

In several of the disputes, Salem also presented his theory as to how his name could have ended up on the account by mistake. Namely, Salem wrote that WCI was located in Unit B of 713 W. Roosevelt Road, while Salem had previously worked in a chicken shop in Unit A of that same address. *See id.* at Ex. F. In addition, Salem noted a possible inconsistency with respect to the records stating that he owed the debt. The invoice provided by AMI to Salem reflected that the debt began to accumulate in 2008. In all of LLS's ACDV responses to Equifax, however, LLS purported to confirm that the date of first delinquency on the account was November 2011. Salem contends that all of this documentation should have served to put Equifax on notice that LLS was not a reliable source of information. In this context, according to Salem, Equifax's failure to do any additional investigation beyond sending ACDV forms to LLS fell short of meeting its obligations under § 1681i.

In its reply brief, Equifax contends that "the information provided by Mr. Salem to Equifax did not provide notice that LLS may be unreliable because the documents provided by Mr. Salem were irrelevant to whether he (and/or Wireless Solutions) were legally liable for the LLS Account." Reply in Supp. of Def. Equifax Information Services LLC's Mot. for Summ. J. ("Reply") 8, ECF No. 60. This is simply incorrect. It is true that the documentation was not *dispositive* as to who was responsible for the debt, but at the very least, it was *relevant*. The business license purports to show that the business owner of WCI was someone other than Salem. Thus, assuming that the debt was owed by WCI and/or Wireless Solutions, as the invoice indicates, the documentation makes it somewhat more likely that Salem was not responsible for the debt. In addition, the discrepancy between the date of first delinquency on the invoice supposedly provided by AMI and the one

confirmed by LLS also tends to make it somewhat more likely that there was a mistake somewhere in LLS's records.[2]

Construing all disputed facts and inferences in Salem's favor, as it must, this Court concludes that a reasonable jury could determine that Salem's disputes should have provided sufficient notice to Equifax that LLS was an unreliable source of information. That is, a reasonable jury could find that the combination of Salem's disputes, his supporting documentation, his theory as to how the debt wound up under his name, and the possible discrepancy regarding the date of first delinquency should have alerted Equifax to the possibility that LLS might not be a reliable source of information. Further, the cost of investigating the factual disagreements at issue—concerning, for example, which business actually incurred the debt to AMI, and which individual, if any, would be liable for that debt—does not seem inordinately large compared to the potential harm to Salem of having a false debt appear on his credit report. As such, there is a genuine issue of material fact as to whether Equifax's reinvestigation procedures were reasonable. Equifax's motion for summary judgment is therefore denied with respect to this issue.

## V. Willfulness

Finally, Salem alleges that Equifax's violation of the FCRA was willful, making it potentially liable for punitive damages under 15 U.S.C. § 1681n. *See* Compl. ¶ 41. Equifax, in contrast, asserts that even if its conduct may have been negligent, it was not willful, and so such

---

[2] Equifax also argues in its reply brief that "[t]he correspondence and other documents offered by Mr. Salem to show that he has no legal liability for the LLS Account cannot be considered by the Court because they are unauthenticated, inadmissible hearsay." Reply 5. With respect to the issue of whether Equifax's reinvestigation was reasonable, however, the AMI invoice and the WCI business license are not hearsay. That is because they are not being offered to prove the truth of what they assert; rather, they are being offered to show that Salem provided this documentation to Equifax. At this juncture, the Court need not address whether the documents might ultimately be admissible for other purposes at trial.

damages are not available. The Supreme Court has held that, as used in § 1681n, the term "willfully" encompasses both knowing and reckless violations of the FCRA. *See Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 56-60 (2007). It went on to state that a company acts in reckless disregard of the FCRA when the action it takes is "not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69. In other words, "only a reading that is 'objectively unreasonable' can be deemed a 'willful' violation." *Van Straaten v. Shell Oil Prods. Co.*, 678 F.3d 486, 489 (7th Cir. 2012) (quoting *Safeco*, 551 U.S. at 69). As the Seventh Circuit has observed, in *Safeco* the Supreme Court "treated willfulness as a question of law." *Id.* at 490-91.

The Court concludes that Equifax is entitled to summary judgment on the issue of willfulness. Salem has cited no case law that elaborates on this standard to explain what exactly constitutes a willful violation of the FCRA, nor has he presented any additional facts that would support a finding of willfulness. His arguments against summary judgment on the willfulness issue merely rehash his arguments as to whether Equifax's conduct violated the FCRA in the first place. *See* Resp. 14. In short, Salem contends that Equifax's policy of relying exclusively on the ACDV process is insufficient as a matter of law, and that this supports a finding that Equifax's misconduct was willful. *See id.* As the previous section of this opinion indicates, however, this misstates the law. Exclusive reliance on the ACDV process is not *per se* unreasonable as a matter of law; indeed, companies are generally permitted to use the ACDV method. The key question, when using it, is whether, in a particular case, a consumer reporting agency is sufficiently put on notice that its original source may be unreliable that it is obligated to do additional investigation.

While a reasonable jury could conclude that Equifax was obligated to perform additional investigation in this case, there is no genuine issue of material fact as to whether any violation of the FCRA that may have been committed was willful. That is, no reasonable jury could conclude that Equifax's belief that its exclusive reliance on the ACDV process was sufficient was "objectively unreasonable." *Van Straaten*, 678 F.3d at 489. Equifax may have misinterpreted its obligations under the FCRA, but it was not acting contrary to any directly controlling authority, and its position was not objectively unreasonable given the whole body of applicable case law. Because Equifax's conduct "falls well short of raising the 'unjustifiably high risk' of violating the statute necessary for reckless liability," *Safeco*, 551 U.S. at 70, summary judgment is granted in Equifax's favor on the question whether it willfully violated the FCRA.

\* \* \*

For the reasons stated above, Equifax's motion for summary judgment is granted in part and denied in part. Equifax is entitled to summary judgment on the § 1681e(b) claim, but the case may go forward with respect to Salem's assertion that Equifax violated § 1681i. Equifax is also entitled to summary judgment on the issue of whether any violation of the FCRA it committed was willful, meaning that the only damages available to Salem are those provided for under § 1681o for a negligent violation of the statute.

Dated: March 6, 2019

John J. Tharp, Jr.
United States District Judge